UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| KELLY A. TOMICKI, | 15-CV-847-RJA-MJR |
| | REPORT AND RECOMMENDATION |
| Plaintiff, | |
| -v- | |
| NANCY A. BERRYHILL,[1] | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

_____

This case has been referred to the undersigned by the Hon. Richard J. Arcara pursuant to 28 U.S.C. §636(b)(1) for the preparation of a report and recommendation on dispositive motions.  (Dkt. No. 10).

Plaintiff Kelly A. Tomicki brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, it is recommended that Tomicki's motion (Dkt. No. 9) be granted, the Commissioner's motion (Dkt. No. 14) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted for the previously named defendant Carolyn W. Colvin.  The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND

I.   *Procedural History*

On September 18, 2012, Tomicki filed an application for SSI alleging disability since September 11, 2009 due to spinal stenosis, severe back pain, and screws in her back. (*See* Tr. 133-38, 144, 148).[2] Tomicki underwent back surgery in 1991 and again in 2012. (Tr. 47). She used to work as a cleaner and piece worker, but she contends that she can no longer work because of her back issues. (*See* Tr. 62, 76, 196, 201). Tomicki's SSI application was denied on December 20, 2012 (Tr. 70, 79-82), after which she requested a hearing before an Administrative Law Judge (Tr. 83-85). On February 18, 2014, Tomicki, represented by counsel, appeared before Administrative Law Judge Donald T. McDougall (the "ALJ") for a hearing. (Tr. 40-69). On April 30, 2014, the ALJ issued his decision denying Tomicki's SSI claim. (Tr. 16-34). Tomicki requested review by the Appeals Council (Tr. 14-15), but on July 31, 2015, the Appeals Council denied Tomicki's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

II.   *Summary of the Evidence*

   A.   *Medical Evidence*

The Court will briefly summarize the medical evidence that is relevant to its findings and recommendations.

In February 2010, Tomicki began visiting Dr. Xin Zhou for lower back pain with numbness and tingling in her left leg. Dr. Zhou noted that Tomicki underwent back surgery (lumbar fusion) in 1991. Dr. Zhou diagnosed Tomicki with "thoracic or

---

[2]   References to "Tr." are to the administrative record in this case.

lumbosacral neuritis or radiculitis unspecified" and "disorders of [the] sacrum." She prescribed pain medication. (Tr. 214-15). Tomicki continued to treat with Dr. Zhou through February 2014, except for a brief period in 2013 when she had to see a different provider due to an insurance issue. Tomicki consistently reported severe back pain at her appointments with Dr. Zhou, even after she underwent a second back surgery in 2012. Tomicki advised Dr. Zhou at several of these appointments that sitting and standing aggravates her pain. Dr. Zhou consistently prescribed different types of medication to help relieve the pain. (Tr. 214-22, 235-88, 340-64).

Dr. Joseph Kowalski performed the aforementioned back surgery (posterior lumbar discectomy and interbody fusion at L3-L4) in April 2012. Dr. Kowalski's pre- and post-operative diagnoses were lumbar spinal stenosis and spondylolisthesis at L3-L4 and L2-L3. (Tr. 223-25). Even with surgery, Tomicki's back pain persisted, and she struggled to sit, stand, and walk for prolonged periods of time. (Tr. 283-84, 326, 328, 330, 331). At some point, Dr. Kowalski advised Tomicki that the surgery would help relieve her leg pain, but not her back pain. (*See* Tr. 283-84).

In November 2012, Tomicki visited Dr. Hongbiao Liu for an internal medicine consultative examination in connection with her SSI application. Tomicki reported a history of chronic lower back pain, ten out of ten on the pain scale, with pain, numbness, and tingling in her legs. Tomicki noted having to use a cane at all times, both indoors and outdoors, and that she could not walk more than fifteen steps even with the cane. Dr. Liu found the cane to be "medically necessary to keep [Tomicki's] balance and limit [her] pain." Tomicki further reported having to change positions every five minutes while sitting or standing. Dr. Liu diagnosed Tomicki with chronic lower back pain, status post-surgery.

He rendered the following medical source statement:  "the claimant has moderate limitation for prolonged walking, bending, and kneeling."  (Tr. 289-93).

Tomicki briefly treated with Nurse Practitioner Veronica Mason in 2013 regarding her lower back pain.  At an appointment in September 2013, Tomicki reported pain in her middle to lower lumbar spine, radiating to her left leg with occasional numbness.  She had difficulty sitting and standing for extended periods of time.  Mason diagnosed Tomicki with post-laminectomy syndrome[3] and backache.  (Tr. 333-39).

### B. *Administrative Hearing Testimony*

Born in 1969, Tomicki was forty-five-years old on the day of the hearing.  (Tr. 44).  She testified that she cannot work due to severe back pain.  (Tr. 45-46).  She is able to perform some household activities notwithstanding her pain, such as cooking simple meals and folding laundry.  (Tr. 55-56).  Her back pain requires her to switch back and forth between sitting and standing every ten minutes.  (Tr. 54).  She relies on a cane to walk and stand, and she estimates being able to walk half a block with the cane.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

---

[3]   "Post-laminectomy syndrome refers to chronic back and/or leg pain that occurs after back (spinal) surgery."  *Navan v. Astrue*, No. 06 Civ. 2757(AKH), 2007 WL 1834830, at *3 n.11 (S.D.N.Y. June 20, 2007), *aff'd*, 303 F. App'x 18 (2d Cir. 2008).

and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe

impairment." *Id.* §416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

     If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant

cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

The ALJ followed the five-step analysis for evaluating disability claims. Under step one, the ALJ found that Tomicki has not engaged in substantial gainful activity since September 18, 2012, her SSI application date. (Tr. 21). At step two, the ALJ concluded that Tomicki has the following severe impairments: "lumbar spinal stenosis and spondylolisthesis, status post fusion surgery; and post-laminectomy syndrome." (*Id.*). At step three, the ALJ found that Tomicki does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 23). Before proceeding to step four, the ALJ assessed Tomicki's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(a)[4] except she can walk no more than one hundred yards, and then only with the use of a cane. She cannot work around hazards, such as, heights or dangerous moving machinery. She cannot climb ladders, ropes, or scaffolds. She cannot work on stairs or ramps. The claimant can work jobs with no more than occasional balancing, stooping, crouching or crawling. She cannot kneel. She must be able to change positions briefly (1-2 minutes) from sitting to standing, or vice versa, at least every half-hour.

(Tr. 24). Proceeding to step four, the ALJ found that Tomicki has no past relevant work — although she engaged in some part-time work over the past fifteen years, the work was not performed at substantial gainful activity levels. (Tr. 28). At the fifth step, the ALJ considered Tomicki's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that she can perform jobs that exist in significant numbers in the national economy, namely, ticket taker, telephone quotation clerk, and charge account clerk. (Tr. 28-29). As a result, the ALJ found that Tomicki can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act since her September 18, 2012 application date. (Tr. 29).

IV.    *Tomicki's Challenges*

Tomicki challenges the Commissioner's disability decision on two grounds: (1) the ALJ's RFC assessment is not supported by substantial evidence; and (2) the ALJ's

---

[4] The ALJ cited 20 C.F.R. §416.967(a), but light work is actually defined in §416.967(b). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §416.967(b).

credibility assessment is erroneous. (*See* Dkt. No. 9-1 (Tomicki's Memorandum of Law)).[5]

### A. *RFC Assessment*

Tomicki argues that the ALJ's RFC assessment — in particular, the ALJ's finding that she can walk one-hundred yards with a cane and needs to briefly switch between sitting and standing at least every half hour — is not supported by substantial evidence.

The record does in fact support the ALJ's conclusion that Tomicki can walk one-hundred yards with a cane. In particular, although Tomicki testified at the ALJ hearing that she can walk only half a block with a cane (Tr. 54), she stated in the function report she completed in connection with her SSI application that she can walk one-hundred yards:

> Question: How far can you walk before you have to stop and rest?
>
> Answer: Maybe a hundred yards.

(Tr. 177).

The Court agrees with Tomicki, however, that the record does not support the ALJ's conclusion that she needs to briefly switch between sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly-specific sit-stand option, nor did the Commissioner identify any such evidence in her motion papers, making it unclear to the Court how the ALJ arrived at this particular finding. Moreover, there is evidence in the record indicating that Tomicki needs to change positions every few minutes, not every thirty minutes as the ALJ concluded. For example:

---

[5] Tomicki withdrew a third argument — that the ALJ should have re-contacted Dr. Zhou for clarification regarding her opinion that Tomicki cannot work — in her reply papers. (*See* Dkt. No. 16 (Tomicki's Reply Memorandum of Law) at 4).

- Tomicki testified that she needs to switch between sitting and standing every ten minutes. (Tr. 54).

- Tomicki informed Dr. Liu that she has to change positions every five minutes while sitting or standing. (Tr. 289).

- Tomicki's treating physician, Dr. Zhao, noted on several occasions that sitting and standing aggravates Tomicki's pain. (Tr. 214, 216, 218, 235, 237, 239, 241, 244, 246, 248, 250, 252, 254, 256, 258, 260, 262, 264, 266, 269, 271, 273, 275, 277, 279, 281, 356, 358).

Accordingly, the ALJ's RFC assessment that Tomicki needs to briefly switch between sitting and standing only every thirty minutes is not supported by substantial evidence. The ALJ's unsupported RFC assessment is not harmless error because the vocational expert relied upon it in opining that Tomicki can perform other work (Tr. 62-66), and the ALJ in turn relied upon the vocational expert's opinion in concluding that Tomicki is not disabled (Tr. 29). This case should therefore be remanded to the Commissioner to reevaluate Tomicki's RFC and, if necessary, further develop the record regarding how often Tomicki must switch between sitting and standing. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where there was no basis for the ALJ's assessment that the claimant would be off task for six minutes an hour, as opposed to some other duration and frequency); *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (remanding where the record contained no evidence to support the ALJ's assessment that the claimant could use his dominant right hand for half the workday).

B. *Credibility Assessment*

Tomicki argues that the ALJ erred by discounting her credibility on the mere basis she is able to perform some activities, such as cooking simple meals, folding laundry,

driving, and shopping. Because the ALJ may end up modifying his credibility assessment after reevaluating Tomicki's RFC on remand, the Court will not address credibility at this juncture.

## CONCLUSION

For the foregoing reasons, it is recommended that Tomicki's motion for judgment on the pleadings (Dkt. No. 9) be granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Arcara.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:      January 11, 2018
            Buffalo, New York

                                              */s/ Michael J. Roemer*
                                              MICHAEL J. ROEMER
                                              United States Magistrate Judge